1
2
3
4
5
6
7
8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10

11   PETER LEVERMAN, on behalf of all
     similarly-situated employees of        Case No. 2:25-cv-04768-WLH-RAO
     Defendants,,
12                                          **ORDER RE MOTION TO REMAND**
                                            **[13]**
13             Plaintiff(s),

14   v.

15   HONEYWELL INTERNATIONAL
     INC. and DOES 1 through 50,
16   inclusive,

17             Defendant(s).

18

19

20        The Court is in receipt of Plaintiff's Motion to Remand (the "Motion") (Mot. to

21   Remand ("Mot."), Docket No. 13), Defendant's Opposition (Opp'n, Docket No. 16),

     Plaintiff's Reply (Pltf. Reply, Docket No. 17), Defendant's Supplement to Motion to
22
     Remand ("Defendant's Supplement") (Def. Supplement, Docket No. 26) and
23
     Plaintiff's Supplement to Motion to Remand ("Plaintiff's Sur-Reply") (Pltf. Sur-
24
     Reply, Docket No. 27).  On July 24, 2025, the Court continued the Motion's hearing
25
     to September 5, 2025.  On July 25, 2025, the Court ordered Defendant to file
26
     abbreviated supplemental briefing and permitted Plaintiff to file further evidence
27
     and/or briefing by August 22, 2025.  (MTR Order, Docket No. 24 at 12).  The Court
28

1  heard oral arguments from the parties on September 5, 2025.  Plaintiff's Motion is

2  **DENIED** for the reasons stated herein.

3  **I.    BACKGROUND**

4       To resolve the instant motion, the Court must determine whether the case's

5  removal from state court complied with the Class Action Fairness Act ("CAFA").

6  The only issue in dispute is whether Defendant has met its burden to establish that the

7  amount in controversy exceeds $5 million.

8       On April 22, 2025, Plaintiff Peter Leverman ("Plaintiff") filed a class action

9  complaint in the Superior Court of California.  (Ex. 1 to Notice of Removal

10  ("Complaint"), Docket No. 1-1).  Plaintiff is a former employee of Defendant

11  Honeywell International Inc. ("Defendant") and worked for Defendant for nearly

12  thirty years.  (Complaint ¶ 9).  Plaintiff brings the suit on behalf of himself and a

13  putative class of "[a]ll current and former non-exempt employees who worked for

14  Defendants in California at any time from four years (plus the additional 178-day

15  statutory tolling period under Emergency Rule 9) prior to the filing of this action

16  through date of class certification."  (*Id.* ¶ 15).

17       As relevant to the instant motion, Plaintiff alleges that he was required to

18  provide 24/7 on-call support coverage to clients.  (*Id.* ¶ 2).  This on-call requirement,

19  Plaintiff alleges, prohibited him from engaging in personal activities given that he was

20  required to respond to calls within 2 hours.  (*Id.* ¶ 21).  Four specific paragraphs

21  provide color to this allegation, so the Court reproduces them in full below.

22       1.  "Specifically, Plaintiff was required to travel more than 8 hours from his

23          home to provide 24/7 on-call support coverage prohibiting engagement in

24          personal activities due to a 2 hour response time restriction by the

25          customer. However, despite maintaining a 24/7 on-call policy for

26          Plaintiff and the class members, Defendants only paid an additional hour

27          for on-call pay." (*Id.*).

28

2. "Plaintiff asked that he be compensated for at least eight hours on
   weekend days for remaining on-call, after which Defendants began
   paying the one hour a day rate and additionally paid Plaintiff for four
   hours of overtime on Saturdays and Sundays." (*Id.* ¶ 22). "Despite this
   arrangement, Defendants regularly underpaid Plaintiff and the class
   members for all on-call hours worked." (*Id.* ¶ 23).

3. "Due to Defendants' failure to compensate for on-call pay, any employee
   whose on call hours totaled more than 8 hours in a workday, or 40 hours
   in a workweek was not compensated for all hours worked, including
   overtime hours, as required under the California law." (*Id.* ¶ 25).

Based on these, and similar, factual allegations, Plaintiff alleges that Defendant
failed to pay plaintiff and class members minimum wages for all wages owed, failed
to pay overtime wages and failed to provide accurate wage statements. (*See generally
id.*).  Plaintiff seeks recovery for the unpaid wages, statutory penalties for failure to
provide accurate wage statements and attorney's fees. (*See generally id.*).[1]

On May 27, 2025, Defendant removed the case to this Court. (Notice of
Removal, Docket No. 1).  Defendant removed the case pursuant to the Class Action
Fairness Act ("CAFA"). (*See generally id.*).  Defendant's Notice of Removal alleged
that Plaintiff's complaint put into controversy over $5,000,000. (Notice of
Removal ¶ 15 (citing to 28 U.S.C. § 1332(d) for amount in controversy requirement)).

In support of Defendant's Notice of Removal, Defendant submitted a
declaration of Anita Swift, Defendant's Senior Paralegal, who declared the following
based on a review of business records. (Swift Decl., Docket No. 4-1).  First, from
October 16, 2020, to the date of the declaration on May 23, 2025, Defendant

---

[1] Plaintiff's Complaint additionally alleges untimely payment of wages, paid sick
leave violations, waiting time penalties and unfair competition. (*See generally*
Complaint).  Because Defendant's notice for removal is constrained to damages for
failure to pay minimum wages, failure to pay overtime and wage statement penalties,
the Court need not detail the remaining causes of action.

1    employed over 553 non-exempt employees in California.  (*Id.* ¶ 3).  Second, this class

2    of employees "worked approximately 131,772 workweeks," were paid an "average

3    minimum wage of $15 per hour" and received over 22,637 wage statements in the

4    same period.  (*Id.*  ¶¶ 3, 4).

5         Based on these declarations, Defendant outlined several assumptions and

6    estimates.  (*See generally* Notice of Removal).  As to Plaintiff and the putative class's

7    claim for failure to pay all wages owed, Defendant noted that while Plaintiff "alleges

8    that he and putative class members provided '24/7 on call support coverage'

9    throughout the entire workweek," Defendant "conservatively assumes that each

10   putative class member incurred two hours of unpaid wages for on-call hours each

11   workweek."  (*Id.* ¶ 21).  Defendant therefore multiplied two by Defendant's estimated

12   number of workweeks (131,772) and Defendant's estimated average minimum wage

13   ($15.00) to estimate the claim for failure to pay wages owed as $3,953,160.  (*Id.*).

14        As to Plaintiff and the putative class's claim for failure to pay overtime wages,

15   Defendant "conservatively assume[d] that each putative class member incurred one

16   hour of unpaid overtime wages each workweek, even though Plaintiff alleges that

17   Defendant maintained a 24/7 on-call policy for the putative class for the entire

18   workweek."  (*Id.* ¶ 24).  Defendant thus estimated that Plaintiff and the putative

19   class's claim for unpaid overtime as $2,964,870 ($15.00 x 1.5 rate x 1 hours per week

20   x 131,772 workweeks.)  (*Id.*).

21        As to Plaintiff and the putative class's claim for wage statement violations,

22   Defendant noted that the Labor Code provides for a penalty of $50 for each initial pay

23   period where a defendant fails to provide accurate written wage statements and $100

24   for each subsequent pay period, up to a maximum penalty of $4,000 per class

25   member.  (*Id.* ¶ 27).  Based on its estimate that the class received 22,673 wage

26   statements, Defendant assumed a maximum penalty for each class member and

27   calculated Plaintiff and the class's claim for wage statement penalties as $2,212,000.

28   (*Id.* ¶ 29).  Finally, Defendant estimated that attorney's fees would be 25% of the total

1    recovery.  (*Id.* ¶ 31).  Defendant therefore calculated Plaintiff's claim for attorney's

2    fees as $2,282,507.50, which is 25% of the sum of Defendant's estimates of Plaintiff's

3    claims for unpaid wages, overtime wages and wage statement penalties.  (*Id.*)

4    Defendant did not provide estimates for any of Plaintiff's additional claims for

5    untimely payment of wages, paid sick leave violations, waiting time penalties and

6    unfair competition.  (*See generally id.*).

7         On June 26, 2025, Plaintiff filed the instant Motion.  (Mot.)  Plaintiff

8    accompanied the Motion with objections to the initial Swift Declaration. (Objections

9    to the Declaration of Anita Swift, Docket No. 13-3).  Plaintiff specifically raised an

10   issue with the fact that Defendant "does not establish how . . . the total number of

11   workweeks within the relevant period were calculated."  (*Id.* at 1).

12        Defendant filed a timely opposition brief ("Opp'n," Docket No. 16) and an

13   accompanying second declaration by Anita Swift detailing how Swift arrived at her

14   total number of workweeks figure.  (Second Swift Decl. Docket No. 16-1).  Swift

15   explained that "[t]he total number of workweeks was calculated by determining the

16   number of calendar days between October 26, 2020, and May 23, 2025 (1,668 days),

17   dividing by seven to arrive at an approximate number of workweeks per employee,

18   and multiplying by 553 employees."  (*Id.* ¶ 4).  Defendant submitted no other

19   evidence justifying its estimates and assumptions.  Plaintiff timely replied to

20   Defendant's opposition.  (Reply, Docket No. 17).

21        Pursuant to the Court's July 25, 2025 Order (Docket No. 24), both parties

22   submitted supplemental briefing to support their arguments related to the instant

23   Motion.  (*See generally* Docket Nos. 26, 27).  Defendant's Supplement attached a

24   declaration by Quoneisha Stephenson, a paralegal for Defendant whose regular duties

25   including accessing and summarizing information from Honeywell's Human Resource

26   Information System ("HRIS") database.  (Declaration of Quoneisha Stephenson

27   ("Stephenson Declaration") ¶ 2).  The Stephenson Declaration calculated "the total

28   number of workweeks between an employee's hire date and termination date that fall

1    within the period between October 16, 2020, and August 7, 2025" for the 553 putative

2    class members. (*Id.* ¶ 5). That calculation yielded 108,373 workweeks. (*Id.*). The

3    Declaration additionally identified 519 employees subject to the alleged on-call

4    policy[2] and that group's corresponding aggregate number of workweeks (102,343)

5    using the same method of hire/termination dates. (*Id.* ¶ 6). Defendant amended their

6    estimates to reflect $1,625,595 in alleged straight-time unpaid on-call wages,

7    $11,513,578.50 in alleged unpaid overtime, $2,212,000 in alleged wage statement

8    penalties, and $3,837,793.38 in attorney's fees for a total estimated amount-in-

9    controversy of $19,188,966.88. (Def. Supplement at 7). Defendant's estimates rely

10    on an hourly rate at the minimum wage of $15.00 an hour and an overtime rate of

11    $22.50 (1.5 times the minimum wage). (*see* Def. Supplement at 6). Plaintiff filed a

12    Sur-Reply disputing the reliability of Defendant's assumptions and calculations. (Pltf.

13    Sur-Reply, Docket No. 27).

14    **II.    LEGAL STANDARD**

15    CAFA evinces "a strong preference that interstate class actions should be heard in

16    a federal court if properly removed by any defendant." *Jauregui v. Roadrunner*

17    *Transportation Servs.*, Inc., 28 F.4th 989, 993 (9th Cir. 2022) (citing *Dart Cherokee*

18    *Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). As such "no

19    antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee*, 574 U.S.

20    at 89. Still, a case may only be removed pursuant to CAFA when certain

21    jurisdictional requirements are met. 28 U.S.C. § 1332(d). As relevant to the pending

22    Motion, a defendant may only remove a Class Action to federal court when the

23    amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2).[3] The amount in

24

25    [2] The Stephenson declaration triangulates this universe by identifying employees
      "whose job qualifications are associated with on-call duties" during the relevant class
26    period. (Stephenson Decl. ¶ 6). These roles include those in positions involving
      "engineering, operations, and field service responsibilities." *Id.*
27    [3] While CAFA imposes requirements beyond the greater than $5,000,000 amount in
      controversy, the only issue in the instant Motion is whether Defendant met its burden
28    as to the amount in controversy. (*See generally* Motion).

6

1  controversy is "an estimate of the *entire* potential amount at stake in litigation," rather

2  than the likely or probable liability of a given defendant.  *Jauregui*, 28 F.4th at 994

3  (emphasis in the original).

4      A defendant's notice of removal "need include only a plausible allegation that the

5  amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S.

6  at 89.  When a plaintiff disputes the allegation, both sides may submit proof and "the

7  court decides, by a preponderance of the evidence, whether the amount-in-controversy

8  requirement has been satisfied."  *Id.* at 88.[4]  A defendant "must be able to rely 'on a

9  chain of reasoning that includes assumptions to satisfy its burden to prove by a

10  preponderance of the evidence that the amount in controversy exceeds $5 million,' as

11  long as the reasoning and underlying assumptions are reasonable."  *Jauregui*, 28 F.4th

12  at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

13  A defendant's assumptions, however, "cannot be pulled from thin air but need some

14  reasonable ground underlying them."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193,

15  1199 (9th Cir. 2015).

16  **III.    DISCUSSION**

17      The disposition of Plaintiff's Motion hinges on whether the action meets

18  CAFA's $5,000,000 amount in controversy requirement.  The Court therefore must

19  determine whether four of Defendant's assumptions justifying their amount in

20  controversy estimates are reasonable—namely, the calculations of (1) the total number

21  of workweeks at issue, (2) the amount of unpaid *on-call* wages allegedly owed to the

22  putative class, (3) the amount of unpaid *overtime* wages allegedly owed to the putative

23  class, and (4) the amount of wage statement penalties allegedly incurred by

24  Defendant.

25

26  [4] When a plaintiff, as here, makes a factual attack on a motion to remand, Plaintiff is
   not required to submit evidence and "need only challenge the truth of the defendant's
27  jurisdictional allegations by making a reasoned argument as to why any assumptions
   on which they are based are not supported by evidence."  *Harris v. KM Indus.*, Inc.,
28  980 F.3d 694, 700 (9th Cir. 2020).

1    Plaintiff first argues that Defendant's assumption regarding the number of

2    workweeks the putative class worked is not reasonable.  Plaintiff further argues that

3    Defendant's assumptions regarding the number of unpaid wages and unpaid overtime

4    wages per week for which Defendant may be liable are unreasonable.  Lastly, Plaintiff

5    disputes Defendants' wage statement penalty calculations for their alleged California

6    Labor Code violations.  The Court addresses each in turn.

7    **A. Number of workweeks and scope of employees subject to on-call**

8    **policy**

9    Defendant's calculations of the value of each claim rely on Defendant's

10   estimate of the number of workweeks the class worked.  (Notice of Removal ¶ 21

11   (incorporating number of workweeks into calculation of failure to pay all wages

12   calculation); *id.* ¶ 24 (same as to unpaid overtime calculation); *id.* ¶ 29 (same as to

13   wage statements violation calculation); *id.* ¶ 31 (calculating attorney's fees based on

14   preceding three claims)).

15   Plaintiff initially raised an issue with Defendant's estimated number of

16   workweeks in an objection filed with Plaintiff's Motion.  (Objections to the

17   Declaration of Anita Swift at 1 (noting that Defendant "does not establish how . . . the

18   total number of workweeks within the relevant period were calculated.")).  In

19   response, Defendant submitted a second Swift Declaration.  (Second Swift Decl.).

20   Anita Swift's second declaration notes "[t]he total number of workweeks was

21   calculated by determining the number of calendar days between October 26, 2020, and

22   May 23, 2025 (1,668 days), dividing by seven to arrive at an approximate number of

23   workweeks per employee, and multiplying by 553 employees." (Second Swift Decl. ¶

24   4).  The Court, however, was skeptical of the assumptions underlying this calculation

25   and declined to "supply its own reasonable calculation of the number of workweeks in

26   controversy."  (MTR Order, Docket No. 24 at 8).  Defendant was given another

27   opportunity to provide further evidence.

28

1    As part of its Supplement, Defendant submitted the Stephenson Declaration that

2    included a records-based approach to calculating the relevant number of workweeks

3    for the period of October 16, 2020, through August 7, 2025.[5]  (Stephenson Decl. ¶¶ 4–

4    5).  Stephenson's analysis of the hire and, if applicable, termination dates of the 553

5    putative class members via payroll records produced an updated workweek calculation

6    of 108,373.  (*Id.*)   That statistic, however, does not exclude those employees subject

7    to the alleged on-call policy.  The Stephenson Declaration ascertains this universe by

8    identifying "519 employees whose job classifications are associated with on-call

9    duties during the relevant class period" such as "those in positions involving

10    engineering, operations, and field service responsibilities." (*Id.* at ¶ 6).  The aggregate

11    number of workweeks for this smaller group of putative class members was calculated

12    to be approximately 102,343 using the same hire-termination date analysis previously

13    discussed.  (*Id.*).

14    The calculation methods employed by the Stephenson Declaration appear to

15    adequately capture the unique periods of employment of each putative class member.

16    Moreover, they assuage the Court's previous concern with the imprecise workweeks

17    calculation in Defendant's initial briefing.[6]  (*See* MTR Order at 7; Reply at 3–5).  The

18    Court finds that Defendant's reliance on employment records to more accurately

19    calculate the number of workweeks at issue is well-founded and reasonable.  *See*

20

21    [5] In its Sur-Reply, Plaintiff takes issue with Defendant expanding the workweek
22    calculation period by approximately two and half months (from May 23, 2025, in
Defendant's Notice of Removal to August 7, 2025, in Defendant's Supplement).  The
23    Court views this extended period as reasonable in light of the allegations of the
Complaint, namely that the putative class is defined as including "all current and
24    former non-exempt employees who worked for Defendants in California at any time
from four years . . . prior to the filing of this action through date of class certification."
25    (Complaint ¶ 15); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th
Cir. 2019).  Defendant sets forth a reasonable assumption that the applicable class
26    period will naturally expand as the litigation progresses—and calculates the relevant
27    workweeks accordingly.
[6] That calculation unreasonably assumed all 553 putative class members worked in *all*
28    weeks from October 26, 2020, to May 23, 2025.

1    *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("[I]n a wage-and-hour

2    case, the number of employees in the class may be most easily determined by

3    examining the defendant's employment records.").  Although Plaintiff asserts that

4    Defendant failed to articulate the basis for claiming these employees fall within the

5    class definition (*see* Pltf. Sur-Reply at 3), that argument disregards the Swift

6    Declaration attached to Defendant's Notice of Removal.  Anita Swift declared that as

7    of May 23, 2025, Defendant employed over 553 *non-exempt* employees in California.

8    (Swift Decl. ¶ 2).  The Court understands Defendant's updated estimate of employees

9    subject to the on-call policy to have come from this universe.  Accordingly, the Court

10    finds Defendant's chain of reasoning sufficient.

11             **B.  Unpaid on-call and overtime hours**

12         The Ninth Circuit "distinguishes between complaints of 'uniform' violations

13    and those alleging a 'pattern and practice' of labor law violations."  *Dobbs v. Wood*

14    *Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (quoting *LaCross v.*

15    *Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)).  Here, Plaintiff alleges a

16    "pattern and practice" violation—or in their words, that Defendant "engaged in a

17    policy and practice of failing to pay Plaintiff and the class members for all on-call

18    hours, resulting in unpaid wages."  (Complaint ¶ 21).  A pattern and practice theory

19    "does not necessarily mean always" violating the Labor Code, so the "defendant

20    seeking removal bears the burden to show a preponderance of the evidence" of the

21    CAFA-required amount in controversy.  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193,

22    1197 (9th Cir. 2015).  But the Ninth Circuit this year clarified that, as it relates to

23    assumed Labor Code violation rates, "it makes little sense to require a CAFA

24    defendant to introduce evidence of the violation rate—really, the *alleged* violation

25    rate—because the defendant likely believes that the real rate is zero and thus that the

26    evidence does not exist."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).

27    For those reasons, this Circuit permits CAFA defendants to assume a violation rate in

28    light of the plaintiff's complaint.  Considering Plaintiff's allegations in the instant

1    action, Defendant's estimates of alleged unpaid on-call and overtime wages—albeit

2    requiring some reductions by the Court as explained herein—are reasonable.

3                  1. *Unpaid on-call ("straight-time") wages*

4         Defendant interprets Plaintiff's unpaid on-call hour ("straight-time") allegations

5    to "mean at least one 24-hour on-call period per workweek per employee who was on-

6    call went unpaid in violation of the policy's contemplated one hour payment." (Def.

7    Supplement at 4). Plaintiff lambasts this violation rate assumption as unreasonable

8    but mistakenly cites to Defendant's previous estimate of "two hours of unpaid wages

9    per workweek." (Pltf. Sur-Reply at 3). Defendant's Supplement amends this original

10    calculation to reflect only a "one-hour shortfall of straight-time pay for each

11    workweek in which the policy applied" in light of Plaintiff's Complaint. (Def.

12    Supplement at 3). The Court views this assumption as eminently reasonable given

13    that Plaintiff alleges a "pattern and practice" of Labor Code violations in their

14    Complaint where "Defendants regularly underpaid Plaintiff and the class members for

15    all on-call hours worked." (Complaint ¶¶ 20, 23). Further, because "Plaintiffs include

16    separate claims for both failure to pay regular wages and failure to pay overtime,

17    [Defendant] properly assumes at least one of each type of violation per week." *Oda v.*

18    *Gucci Am., Inc.*, 2015 WL 93335 at *5 (C.D. Cal. Jan. 7, 2015).[7] Such chain of

19

20    [7] At oral argument, Plaintiff's counsel sought to distinguish *Oda* from the instant case,
as the defendant there submitted a declaration attesting to the fact that the employees

21    at issue were "predominantly full time employees, who are typically scheduled to
work 8 hour shifts, five days per week." *See Oda,* 2015 WL 93335, at *3. The Court

22    is unpersuaded by that argument as the lodestar of Defendant's assumptions remains
one of reasonableness. *See id.* at *5. In Plaintiff's Complaint, he alleges that he

23    "asked that he be compensated for at least eight hours on weekend days for remaining

24    on-call, after which Defendants began paying the one-hour-a-day rate and additionally
paid Plaintiff for four hours of overtime on Saturdays and Sundays. Despite this

25    arrangement, Defendants regularly underpaid Plaintiff and the class members for all
on-call hours worked." (Compl. ¶ 24). Defendant correctly points out that the

26    Complaint is devoid of any reference to class members working schedules different

27    from his own. (Opp'n, Docket No. 16 at 9). As such, Defendant reasonably assumes,
for purposes of amount in controversy calculations, that each member of the putative

28    class was deprived of one hour of overtime pay per week.

1   reasoning and its underlying assumptions are properly "founded on the allegations of

2   the complaint." *Perez*, 131 F. 4th at 808. "[A]ssumptions made part of the

3   defendant's chain of reasoning need not be proven." *Id.*  Holding otherwise would

4   require defendants to "prove [they] actually violated the law at the assumed rate"

5   while simultaneously maintaining they did not commit the alleged violations.  *Id.*; see

6   also *Franklin v. Home Depot U.S.A., Inc.*, No. 5:25-CV-03657-BLF, 2025 WL

7   1983036, at *5 (N.D. Cal. July 17, 2025) (noting that "with regard to assumed

8   violation rates, since the violations are merely *alleged* and the defendant presumably

9   believes that evidence of the violation rate 'does not exist.'").

10        Defendant, in line with his Court's order, ascertained their straight-time

11  calculations by (1) excluding employees not subject to the policy, and (2) reasonably

12  assuming that *at least* one 24-hour on call period per workweek per employee went

13  unpaid.  Plaintiff may dispute the meaning of "regularly underpaid" in their

14  Complaint, but this Court is bound by the language of the complaint upon removal

15  and the logical inferences that flow from it.  Plaintiff was "free to use some more

16  specific phrase . . . when drafting the complaint." *Perez*, 131 F.4th at 810; *see also*

17  *Eleazar Santos v. The Pictsweet Co., et al.*, No. 2:25-CV-03181-AB-SSC, 2025 WL

18  2424357, at *5 (C.D. Cal. Aug. 20, 2025).  Accordingly, the Court accepts

19  Defendant's $1,625,595 estimate of unpaid on-call wages.[8]

20              2. *Unpaid overtime allegations*

21        What does give the Court pause is Defendant's amended estimate relating to

22  unpaid overtime wages.  In their Notice of Removal, Defendant "conservatively

23  assume[d] that each putative class member incurred *one* hour of unpaid overtime

24  wages each workweek" for a total of $2,964,870 in unpaid overtime.  (Notice of

25  Removal at 8) (emphasis added).  In its Supplement, Defendant inflates this figure to

26

27  [8] Defendant's counsel asserted at oral argument that many of the employees subject to
    on-call duties are highly-skilled laborers, with an average wage of around $42 an
28  hour.

                                        12

1    $11,513,578.50 to account for *five* hours of unpaid overtime wages each workweek

2    for each class member. (Def. Supplement at 6). This radical disparity in estimates of

3    unpaid overtime wages goes mostly unexplained, other than Defendant's citation to

4    Plaintiff's allegation that "any employee whose on-call hours totaled more than 8

5    hours in a workday, or 40 hours in a workweek was not compensated for all hours

6    worked, including overtime hours as required under California law." (*Id.* at 5; Compl.

7    ¶ 25). Plaintiff does allege in the Complaint that "Defendants began paying the one

8    hour a day rate and additionally paid [him] for four hours of overtime on Saturdays

9    and Sundays" upon his request for proper compensation. (Compl. ¶ 25). That

10    allegation, however, is with respect to Plaintiff and not the class as a whole. Although

11    the burden of proving the actual violation rate does not fall on Defendant, *see Perez*,

12    131 F. 4th at 808, the Court must still find this calculation to be supported by a

13    preponderance of evidence. Defendant's amended estimate is not. As the Court has

14    stated in its previous Order, "[w]ithout grounding in the Complaint, these numbers are

15    essentially 'pulled from thin air,' *Ibarra*, 775 F.3d at 1199, and cannot support

16    Defendant's calculations." (MTR Order, Docket No. 24 at 11). Defendant's

17    $11,513,578.50 estimate is therefore disregarded for purposes of calculating the

18    amount in controversy.

19       The Court will rely instead on defendant's previous estimate of one hour in

20    unpaid overtime per week per putative class member in calculating the amount in

21    controversy, adjusted to account for Defendant's amended workweeks calculation.

22    ($15.00 x 1.5 rate x 1 hour per week x 108,373 workweeks[9] = $2,438,392.50) (*See*

23    Def. Supplement at 5; Notice of Removal at 8). It is wholly reasonable for Defendant

24    to derive such an estimate from the imprecise "pattern and practice" allegation "that

25

26    [9] For the avoidance of doubt, the Court relies on the 108,373 workweeks calculation here as Plaintiff seeks to represent a putative class of all non-exempt employees. (*See*

27    Complaint ¶ 15). Accordingly, the appropriate universe of employees is 553 for purposes of calculating unpaid overtime, as opposed to the universe of 519 employees

28    for calculating unpaid "straight-time" on-call wages.

1  Defendants regularly underpaid Plaintiff and the class members for all on-call hours

2  worked." (Complaint ¶¶ 20, 23); *see also Ray v. Wells Fargo Bank, N.A.*, 2011 WL

3  1790123, *67 (C.D. Cal. May 9, 2011) (finding that defendant's estimates based on

4  one hour of unpaid overtime per class member were reasonable given allegation of

5  regular failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL

6  4928753, *4 (E.D. Cal. 2011) (finding that because the complaint did not "lend itself

7  to precise calculations," defendants' conservative calculations were reasonable).

8  Plaintiff's citations to orders from this Court[10] that rejected similar one-hour-per-week

9  overtime violation estimates are well-taken, but the Court must square its reasoning

10  with Court orders finding the opposite (*see, e.g.*, *Oda v. Gucci Am., Inc.*, No. 2:14-

11  CV-07469-SVW, 2015 WL 93335 (C.D. Cal. Jan. 7, 2015), and the Ninth Circuit's

12  recent decision in *Perez*. 131 F.4th 804 at 808. That opinion admonishes lower

13  courts against requiring Defendants to introduce evidence of an alleged violation

14  rate—which is in effect, a concession of liability. *Id.* A court, however, can require a

15  defendant to "provide information derived from [their employment] records" as to the

16  number of employees in a putative class. *Id.* That is precisely what Defendant has

17  provided here to support their calculations.

18      Combining these unpaid straight-time and overtime calculations, the Court

19  estimates the amount in controversy to stand at $4,063,987.50 without factoring in

20  associated attorney's fees, wage statement penalties, and alleged damages stemming

21  from Plaintiff's other causes of action (waiting time penalties, failure to pay paid sick

22  leave, etc.).

23

24

25

---

26  [10] *Smith v. Diamond Resorts Mgmt., Inc.*, No. EDCV 15-2477-VAP, 2016 WL
    356020, at *5 (C.D. Cal. Jan. 28, 2016); *Arias v. Shyft Grp. GTB, LLC*, No. CV 23-

27  1582-JFW, 2023 WL 3559311, at *2–3 (C.D. Cal. May 17, 2023); *Peters v. TA
    Operating, LLC*, No. EDCV 22-1831 JGB, 2023 WL 1070350, at *5 (C.D. Cal. Jan.

28  26, 2023).

1          **C. Wage Statement Penalties**

2          Plaintiff additionally alleges that Defendant committed recurring violations of

3    California Labor Code § 226 by providing inaccurate itemized wage statements.

4    (Compl. ¶¶ 56–60). "Specifically, the wage statements issued to Plaintiff and class

5    members did not accurately state each pay period all of the information required by

6    [the] Labor Code." (*Id.* ¶ 58). Relying on that allegation, Defendant assumes that the

7    553 putative class members received inaccurate wage statements for the duration of

8    the class period. The Swift Declaration specifically attests to the 22,673 wage

9    statements issued to the 553 putative class members. (Swift Decl. ¶ 4). Plaintiff takes

10   issue with this calculation, asserting that Defendant "fails to explain why every

11   employee would be entitled to the subsequent or maximum penalties under § 226."

12   (Mot. at 10).

13          The Court is inclined to agree with Plaintiff on this point, as Defendant has

14   made no showing that each putative class member received over 40 defective wage

15   statements, enabling them to recover the $4,000 maximum statutory penalty. The

16   total number of pay statements issued to the putative class distracts from the critical

17   question: How many pay statements did each putative class member receive during

18   the class period? Only that data can shed light on the universe of employees

19   potentially eligible to receive the maximum statutory penalty of $4,000. Without it,

20   the Court cannot find Defendants' underlying assumptions reasonable. *See Garibay v.*

21   *Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming the

22   lower court's finding that defendant failed to meet their burden of proof with their

23   assumption that "every single member of the class would be entitled to recover

24   penalties for every single pay period"). On the other hand, it is beyond dispute that

25   this claim involves *some* significant amount in controversy. Nevertheless, the Court

26   need not address the proper estimate of these wage statement penalties as the total of

27   unpaid on-call, unpaid overtime hours, and estimated attorney's fees meets CAFA's

28   amount in controversy requirement.

**D. Attorney's Fees**

Attorney's fees are "properly included in calculations of the amount in controversy. *Garibay*, 539 F. App'x at 764. In this Circuit, 25% of the total recovery is the "benchmark" level for reasonable attorney's fees. *Id.* The Court accepts Defendant's proposed 25% recovery for attorney's fees. That proportion of the estimated $4,063,987.50 in unpaid on-call and overtime hours—deemed reasonable by the Court for the foregoing reasons—is $1,015,996.88 in attorney's fees.

**E. Total Amount in Controversy Estimate**

The Court's accepted amount in controversy estimates are as follows:

| | |
|---|---|
| Alleged Straight-Time Unpaid On-Call | $1,625,595 |
| Alleged Unpaid Overtime | $2,438,392.50 |
| Alleged Wage Statement Penalties | Undetermined[11] |
| Attorney's Fees | $1,015,996.88 |
| Other Causes of Action (Failure to Pay Sick Leave, Waiting Time Penalties, etc.) | Undetermined |
| **TOTAL** | At least $5,079,984.38 |

///

///

///

---

[11] The Court need not evaluate the reasonableness of Defendants' estimates related to alleged wage statement penalties. As discussed in this Order, Defendant's reasonable assumptions as to the other components of the amount in controversy are sufficient to overcome the CAFA amount in controversy requirement, and it is reasonable to assume that *some* amount can be attributed to the alleged wage statement penalties.

1    **IV.    CONCLUSION**

2        For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand.

3    Defendant is ordered to file a responsive pleading within 14 days of this Order.

4

5        **IT IS SO ORDERED.**

6

7    Dated: 9/9/2025                                      _____

                                                          HON. WESLEY L. HSU

8                                                         UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28